IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01586-LTB-MEH

DANNY O. DANIELS,

      Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,
PHILLIP TEDESCI, in his individual and official capacities,
ARISTEDES ZAVARAS, in his individual and official capacities,
JAMES MICHAUD, in his individual and official capacities, and
BURL MCCULLAR, in his individual and official capacities,

      Defendants.

---

## RECOMMENDATION ON PLAINTIFF'S MOTION FOR T.R.O. AND PRELIMINARY INJUNCTION, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Pending before the Court is Plaintiff's Motion for T.R.O. and Preliminary Injunction [filed January 26, 2009; docket #37], a Motion to Dismiss Second Amended Complaint filed by Defendants Colorado Department of Corrections ("CDOC"), Zavaras, Michaud and McCullar [filed March 13, 2009; docket #52], and Plaintiff's Motion for Summary Judgment [filed June 1, 2009; docket #89].   Because the parties submitted evidentiary materials in support of their positions on the Motion to Dismiss, the motion was converted to a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.   Docket #84.   By Order of Reference to United States Magistrate Judge, these matters have been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). The matters are fully briefed, and the Court held an evidentiary hearing on the Motion for T.R.O. and Preliminary Injunction on April 2, 2009.   The Court recommends that, for the reasons stated herein, Defendants' Motion for Summary Judgment be **granted**, Plaintiff's Motion for Summary

Judgment be **denied**, and Plaintiff's Motion for T.R.O. and Preliminary Injunction be **denied**.[1]

## BACKGROUND

### I.      Findings of Fact

Based upon the written record and the testimony provided at the April 2, 2009 evidentiary hearing, the Court finds the following facts:

1.      Plaintiff is a prison inmate who is currently incarcerated in the Colorado Department of Corrections ("CDOC") serving a sentence for convictions of First Degree Assault-Cause Injury with a Deadly Weapon; Menacing – Real or Simulated Weapon; and Reckless Endangerment in Case No. 04CR1823, Arapahoe District Court, Colorado.  Docket #3 at 35.  Plaintiff's convictions arose out of a July 14, 2004 incident in which the Plaintiff shot one of his neighbors twice with a handgun.  *Id*. at 37.

2.      Previously, on September 19, 1991, Plaintiff pled guilty to the charges of Unlawful Sexual Intercourse with a Minor ("Statutory Rape") and Assault with a Firearm in Case No. CR124262, Superior Court of California, County of San Diego.  Docket #3 at 19.

3.      The written plea agreement for Case No. 124262, Superior Court of California, County of San Diego is contained on a pre-printed form.  *See id*.  Section 2 of this plea agreement

_____

[1]Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

states the following: "I have not been induced to enter the above plea by any promise or representation of any kind, except: (Briefly describe any agreement with the District Attorney):" and in handwriting, the remaining section states: "Dismiss Balance, Strike allegations." *Id.* The section contains Plaintiff's initials reflecting agreement. *Id.*

4.      The plea agreement also contains a section identified as "Harvey Waiver" that states the following: "The sentencing judge may consider my prior criminal history and the entire factual background of the case, including any unfiled, dismissed or stricken charges or allegations or cases when granting probation, ordering restitution or imposing sentence." *Id.* at 20. The section contains Plaintiff's initials reflecting agreement. *Id.*

5.      The plea agreement also contains statements that "I am entering my plea freely and voluntarily, without threat or fear to me or anyone closely related to me" and that "I am pleading guilty because in truth and in fact I AM GUILTY." *Id.* (emphasis in original). These statements contain Plaintiff's initials reflecting agreement. *Id.*

6.      The plea agreement also contains handwriting reflecting that the plea was entered pursuant to *People v. West.* The section contains Plaintiff's initials reflecting agreement. *Id.*

7.      The plea agreement reflects Plaintiff's signature and date, September 19, 1991. *Id.*

8.      In accordance with the plea agreement, the original charges of Forcible Rape (two counts), Sodomy of a Person Under 18, Sodomy by Use of Force, Assault Great Bodily Injury and with Deadly Weapon, Shooting at Inhabited Dwelling, and Drawing or Exhibiting a Firearm were dismissed. Docket #39 at 7; docket #75 at 15.

9.      None of the listed Defendants in this case were parties to the plea agreement.

10.     The plea agreement contains no agreement or stipulation indicating that the agreement was to have any effect of any kind on a prison's determination of Plaintiff's

classification, rehabilitation or treatment needs.

11.     A "Change of Plea" document, dated September 19, 1991, reflects the minutes of Plaintiff's change of plea hearing at which he withdrew his original "not guilty" plea and changed to a plea of "guilty" to Count 2 (Statutory Rape) and Count 6 (Assault with Firearm).  Docket #3 at 18.  The document reflects that the criminal information was amended to add a charge pursuant to PC 1192.7.  The Plaintiff was arraigned on the amended information, including the added charge, to which he pled not guilty.  *Id.*

12.     On or about November 25, 1991, upon the convictions for Unlawful Sexual Intercourse with a Minor and Assault with a Firearm, Plaintiff was placed on felony probation and the imposition of his sentence was suspended.  Docket #76 at 27.

13.     On October 2, 1995, Judge William Mudd of the San Diego County Superior Court "read and considered" a report and recommendation in Case No. CR124262 from the San Diego County Probation Department that Plaintiff's formal probation revert to probation to the Court based upon the deputy probation officer's statements that Plaintiff had been under supervised release in Colorado (pursuant to terms of an Interstate Compact) since September 1994, Plaintiff had met his probation obligations, and Colorado authorities had recommended that Plaintiff's formal probation supervision terminate, but that he remain on unsupervised probation until his termination date of November 22, 1996.  Docket #3 at 25-26.

14.     During the Plaintiff's current incarceration with the CDOC, he was classified as an S-5 sex offender and recommended for the Sex Offender Treatment and Monitoring Program (SOTMP).  Docket #58-2.  "S-5" refers to offenders with past or current felony sexual offense convictions.  Docket #3 at 73.

15.     Although the Plaintiff has been classified by the CDOC as a sex offender, he will not

be required to register as a sex offender upon his release from the CDOC.  Docket #57-6.

## II.   Procedural History

This *pro se* action was initiated on July 28, 2008, but upon an order by Magistrate Judge Boland, the Plaintiff filed an Amended Prisoner Complaint on September 5, 2008 [docket #6].  Upon initial review, Judge Weinshienk dismissed certain defendants from the action based upon their immunity to suit and ordered the case to proceed against the remaining defendants.  Docket #14. Before Defendants responded to the Amended Complaint, this Court held a Scheduling Conference on December 17, 2008, at which Plaintiff requested leave to file a second amended complaint.  The Court granted the request, and Plaintiff filed his Second Amended Complaint (which refers to factual allegations made in the Amended Complaint) on January 20, 2009.  *See* docket #39.  The Plaintiff seeks declaratory relief outlining the terms of the plea agreement with California, prospective injunctive relief against unauthorized use of the plea agreement, an order "expung[ing] inaccurate information from his working and mental health files," consequential damages resulting from Defendants' breach of contract, compensatory damages for emotional distress, punitive damages, and an award of costs.  *Id.*  The Court set a February 19, 2009 deadline for filing an answer or other response to the Second Amended Complaint.  Docket #28.

In the meantime, Plaintiff filed the within Motion for T.R.O. and Preliminary Injunction on January 26, 2009 [docket #37].  This Court set a hearing on the motion for March 6, 2009 [docket #42].  However, when Defendants failed to respond to the motion or to the Second Amended Complaint, the Court issued an Order to Show Cause why default should not enter against Defendants.  Counsel for Defendants responded the following day asserting that she had not received notice by the Court or by the Plaintiff that any pleadings had been filed [docket #48].  The Court reminded counsel that, to receive notice of docket entries, she was required to sign a pleading or file

a notice of entry of appearance pursuant to this Court's ECF Procedures, ordered Defendants to file an answer or other response on or before March 13, 2009, and reset the hearing on the Motion for T.R.O. for March 26, 2009 [docket #49].

Defendants timely filed the within Motion to Dismiss on March 13, 2009 and a response to the Motion for T.R.O. on March 23, 2009. Due to inclement weather on March 26, 2009, the Court heard evidence on the Motion for T.R.O. on April 2, 2009, and ordered Plaintiff to file a written reply in support of the motion no later than April 16, 2009 [docket #65]. In addition, the Court granted Plaintiff's request for an extension of time to respond to the Motion to Dismiss to April 26, 2009. *Id.* Defendants filed their reply to Plaintiff's response on May 8, 2009, and on May 15, 2009, this Court notified the parties that it would convert the Motion to Dismiss to a Motion for Summary Judgment [docket #84]. The Court ordered additional briefing on the Motion for Summary Judgment to be filed on or before June 1, 2009; in response to the notice, Plaintiff filed a "memorandum of law regarding parole ineligibility." Docket #86. In addition, on June 1, 2009, Plaintiff filed the within Motion for Summary Judgment asking that the Court rule in his favor. Defendants timely filed a response to the motion on June 22, 2009, but Plaintiff did not file a reply.

## DISCUSSION

### I.   Defendants' Motion for Summary Judgment

####    A.   Standard of Review

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the

governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Id.* at 323; *Maldonado v. City of Altus*, 433 F.3d 1294, 1302 (10th Cir. 2006).

If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten v. Burlington Northern and Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1256 (10th Cir. 2005).

B.    <u>Sovereign Immunity</u>

To the extent the Plaintiff is attempting to sue the Colorado Department of Corrections and/or the individual Defendants in their official capacities for monetary relief, Eleventh

Amendment immunity is typically raised as a defense.  However, Defendants did not raise the immunity in this case and the Court determines not to raise it *sua sponte*.  *U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) ("a court may raise the issue of Eleventh Amendment immunity *sua sponte* but, unlike subject-matter jurisdiction, it is not obligated to do so") (citing *Wisconsin Dep't of Corrs. v. Schacht*, 524 U.S. 381, 389 (1998)).  Like an affirmative defense, Eleventh Amendment immunity may be waived by the affected party.  *See id.*  However, the Court notes that, while Eleventh Amendment immunity applies to suits arising under 42 U.S.C. § 1983 and precludes federal jurisdiction over state entities and state officials acting in their official capacities as to retroactive monetary relief, jurisdiction is not precluded as to prospective injunctive relief.  *See Quern v. Jordan,* 440 U.S. 332, 345 (1979).  Here, the Plaintiff seeks prospective injunctive relief as to Defendants' future "use" of his plea agreement.

B.      Qualified Immunity

The Defendants assert that they are entitled to qualified immunity on claims against them in their individual capacities.  Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It is an entitlement not to stand trial or face the other burdens of litigation.  *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).  The privilege is an immunity from suit rather than a mere defense to liability.  *Id.* When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity.  *Riggins v. Goodman,* – F.3d –, 2009 WL 1986824,*4 (10th Cir. July 10, 2009).  "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity."  *Id.* (citing *Pearson v. Callahan*, – U.S. –,

129 S. Ct. 808, 818 (2009)).

This two-part burden is a heavy one, and it must be met before the defendant bears his initial burden on summary judgment:

> A summary judgment decision involving the defense of qualified immunity is reviewed "somewhat differently" from other summary judgment rulings. When a defendant raises the issue of qualified immunity, the plaintiff must satisfy a two-part test. First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory right the defendant allegedly violated was clearly established at the time of the conduct at issue. A right is clearly established only if there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains. Only if the plaintiff establishes both elements of the test does the defendant bear the traditional burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.

*Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000) (internal quotations and citations omitted). The Supreme Court recently discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation. *Pearson,* 129 S.Ct. at 816-22. *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, the Court examines first whether the Plaintiff has demonstrated on the facts alleged that the Defendants violated his constitutional or statutory rights. Even drawing all inferences in the light most favorable to him, I find that Plaintiff has failed to show that Defendants' actions violated a constitutional or statutory right.

        1.        Claim One - Breach of Plea Agreement

The Plaintiff contends that Defendants breached the 1991 plea agreement entered into

between himself and the State of California by considering the criminal charges and underlying factual allegations in classifying him, and requiring him to register, as a sex offender.

A material breach of a plea agreement may constitute a violation of the constitutional right to due process. *Gibson v. Klinger*, 232 F.3d 799, 803 (10th Cir. 2000). Whether government conduct has violated a plea agreement presents a question of law. *United States v. Robertson,* 45 F.3d 1423, 1442 (10th Cir.), *cert. denied,* 516 U.S. 844 (1995), and *cert. denied sub nom*, *Graves v. United States*, 515 U.S. 1108 (1995) and *Torres v. United States,* 515 U.S. 1108 (1995). "Where the government obtains a guilty plea predicated in any significant degree on a promise or agreement with the prosecuting attorney, such promise must be fulfilled to maintain the integrity of the plea." *United States v. Hand,* 913 F.2d 854, 856 (10th Cir. 1990). Interpreting the terms of a plea bargain involves a two-step process. The court must first examine the nature of the prosecutor's promise. *United States v. Pogue,* 865 F.2d 226, 227 (10th Cir. 1989). Next, the court examines this promise based upon the defendant's reasonable understanding upon entry of the guilty plea. *See Robertson,* 45 F.3d at 1442.

The general principles of contract law guide the court's evaluation of the government's obligations under the agreement. *United States v. Brye*, 216 F.3d 1207, 1209 (10th Cir. 1998). Thus, the court looks to the express language of the agreement for guidance. *See id.* The government's obligations to the defendant do not arise from mere silence. *See United States v. Rockwell Int'l Corp.,* 124 F.3d 1194, 1199 (10th Cir. 1997). Moreover, it is well-settled that the parole evidence rule precludes parties from admitting extrinsic evidence to contradict or add to the terms of a binding and completely integrated agreement. *See id.*

A plaintiff has the burden of proving the underlying facts establishing the breach by a preponderance of the evidence. *Allen v. Hadden,* 57 F.3d 1529, 1534 (10th Cir.), *cert. denied,* 516

U.S. 1000 (1995).

Here, looking to the express language of the plea agreement for guidance, the Court agrees with Defendants that none of them are parties to the agreement and, therefore, cannot be bound to the terms or conditions made therein.[2]  In fact, no prison facility or official is a party to the plea agreement.  Even if Defendants were parties to the agreement, while the express language of the agreement reflects that the balance of the charges were to be dismissed and the allegations stricken, the Plaintiff acknowledged in the agreement that the court might consider such charges and allegations during sentencing.  In any case, such language would not preclude a party to the agreement from considering the charges and allegations pertaining to the crimes for which the Plaintiff pled guilty.  In addition, the Plaintiff has failed to demonstrate that any promises he alleges were made by the State of California regarding sex offender classification and/or visitation rights were made part of the plea agreement; there is nothing in the written plea agreement regarding such promises.  Again, even if he had attempted to, the Plaintiff may not admit extrinsic evidence to add to the terms of his plea agreement.

Plaintiff argues that the plea agreement is binding upon the Defendants under the Full Faith and Credit Clause.  Article IV, Section 1 of the United States Constitution provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may be general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."  The Plaintiff has no private right of action  under the Full Faith and Credit Clause.  "The full faith and credit clause 'has nothing to

---

[2]Had the Defendants been parties to the plea agreement and had the Plaintiff alleged that Defendants failed to fulfill an express promise made in the plea agreement, this Court acknowledges that Plaintiff may have been required to bring his contract claim pursuant to 28 U.S.C. § 2254, rather than 42 U.S.C. § 1983. *See Paige v. Oklahoma Dep't of Corrections*, 248 F. App'x 35, 37 (10th Cir. Sept. 7, 2007).

do with the conduct of individuals ... and to invoke the rule which it prescribes does not make a case arising under the Constitution or laws of the United States.'" *Rogers and Platt,* 814 F.2d 683, 690 (D.C. Cir. 1987) (citing *Minnesota v. Northern Securities Co.,* 194 U.S. 48, 72 (1904)).  However, to the extent the Plaintiff implicates claim or issue preclusion doctrines through his argument, the Court addresses such argument below at paragraph B.6.  *See Baker v. General Motors Corp.*, 522 U.S. 222, 233 (1998).

Based on the foregoing, this Court recommends finding that the Plaintiff has failed to demonstrate the Defendants breached a plea agreement.

In the alternative, the Plaintiff claims Defendants' actions are barred by promissory estoppel. The elements of a promissory estoppel claim are: (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promise; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice.  *See Nelson v. Elway,* 908 P.2d 102, 110 (Colo. 1995); Restatement § 90.  Here, Plaintiff has failed to establish that Defendants made any promises to him on which he may have reasonably relied to his detriment. Consequently, the Court recommends finding that Plaintiff has failed to raise any issues of material fact regarding his promissory estoppel claim.

> ### 2.   Due Process

Plaintiff alleges that information taken from the 1991 prior conviction has been used improperly to classify Plaintiff as a sex offender without a hearing, to deny Plaintiff earned time credits, to mandate sex offender registration, to deny Plaintiff contact with his children, and "will be used to alter the conditions of plaintiffs [sic] mandatory parole."  Docket #39 at 11, docket #6 at

10.[3]  The Court will address each allegation in turn.

a.    Classification

The potential adverse consequences of a correctional facility's classification of an inmate as a sex offender, if the inmate ***has not been convicted of a sex offense***, may be "something of value entitled to procedural due process." *Chambers v. Colorado Dep't of Corrections,* 205 F.3d 1237, 1243 (10th Cir. 2000) (emphasis added).  If an inmate has not been convicted of a sex offense, the CDOC must afford the inmate a hearing so that he or she may contest the sexual basis of the conviction.  *Gwinn v. Awmiller* 354 F.3d 1211, 1218 (10th Cir. 2004).

Here, the Plaintiff was convicted of a felony sex offense, Unlawful Sexual Intercourse with a Minor (Statutory Rape), in 1991.  Plaintiff does not deny such conviction.  Consequently, he was properly classified by the CDOC as an S-5 sexual offender for purposes of the Sex Offender Treatment and Monitoring Program.  *See* docket #3 at 73 (S-5 refers to "offenders with past or current felony sexual offense convictions"); *see also* Colo. Rev. Stat. § 16-22-102(3) ("'Convicted' or 'conviction' means having received a verdict of guilty by a judge or jury, having pleaded guilty

---

[3]The Court notes that there may be some confusion regarding the scope of the operative complaint in this matter and, therefore, will provide some procedural background.  At the Scheduling Conference, Plaintiff requested leave to file an amended complaint and, since there was no objection from Defendants who had filed no answer or other responsive pleading at the time, the Court granted the request.  Plaintiff timely submitted a Second Amended Complaint; however, the pleading did not appear on the docket on the date it was submitted.  To correct the docket, this Court issued a minute order "accepting" the Second Amended Complaint for filing and the pleading was docketed contemporaneously with the order.  Defendants, then, filed the within Motion to Dismiss, in which Defendants note that it is improper for Plaintiff to refer to the first Amended Complaint within the body of the Second Amended Complaint, since the latter supercedes the first.  Docket #52 at 23.  Typically, Defendants are correct that only one pleading serves as the operative pleading in a civil matter.  However, the Court recognizes that the Plaintiff may have (mis)understood that, by "accepting" the Second Amended Complaint for docketing, the Court "accepted" the pleading as properly filed  under the rules.  Thus, to the extent that the allegations are not inconsistent with those pled in the Second Amended Complaint, the Court will consider referenced factual allegations in the first Amended Complaint.  Notably, Defendants referred to and considered the factual allegations set forth in Plaintiff's first Amended Complaint for his claim under the Fifth Amendment against self-incrimination.  *See* docket #52 at 22 and docket #39 at 13.

or nolo contendere, having received a disposition as juvenile, having been adjudicated a juvenile delinquent, or having received a deferred judgment and sentence or a deferred adjudication."). As such, the Plaintiff was not entitled to an additional hearing to contest the sexual basis of the conviction. *See Neal v. Shimoda*, 131 F.3d 818, 831 (9th Cir. 1997) (where inmate convicted of a sex offense "as the result of a bench trial, jury trial or plea agreement, [he] has received the minimum protections required by due process").

Moreover, Plaintiff's assertion that Defendants' classification decision was based on a provision in Colo. Rev. Stat. § 16-22-103(1)(b) (Plaintiff argued during the hearing that the offense for which he was convicted in California did not constitute an unlawful sexual offense in Colorado) is misplaced, as such provision relates only to sex offender registration requirements.

b.      Earned Time Credits

The Court notes that the Plaintiff does not include in his request for relief a claim for earned time credits, despite the fact that Plaintiff alleges such credits have been improperly denied due to his sex offender classification. "[E]arned time credits are a matter of discretion under Colorado law; thus, there is no basis upon which the earned time credits statute may be interpreted to create an entitlement or liberty interest for purposes of a due process claim." *Gross v. Colorado Dep't of Corrections*, 75 F. App'x 702, 704 (10th Cir. 2003). Nevertheless, to the extent that the Plaintiff seeks, through his due process claim, restoration of earned time credits lost as a result of his classification as a sex offender, the Plaintiff must pursue his claim in a habeas corpus proceeding rather than through a claim pursuant to 42 U.S.C. § 1983. *Fistell v. Neet*, 125 F. App'x 219, 225 (10th Cir. 2005).

c.      Sex Offender Registration

Defendants have submitted unrebutted evidence that Plaintiff will not be required to register

as a sex offender in Colorado upon his release from incarceration.  Therefore, Plaintiff's due process claim, to the extent one would be otherwise viable, fails.

d.      Contact with Children

Inmates do not have a constitutional right to contact visits.  *Block v. Rutherford*, 468 U.S. 576, 588 (1984).  With respect to classified sex offenders' visitation with minor children, the Tenth Circuit has determined that the CDOC did not violate an inmate's constitutional rights by prohibiting visits between the inmate, a convicted sex offender who refused to comply with the requirements of the SOTMP and his child.  *Wirsching v. State of Colorado*, 360 F.3d 1191, 1201 (10th Cir. 2004). Defendants argue that Plaintiff's allegations are similar, if not identical, to Mr. Wirsching's. Plaintiff responds that the facts in *Wirsching* are distinguishable because there is no evidence Mr. Wirsching was promised that he would not be classified as a sex offender and that there would be no restrictions on visitations or familial associations.  Considering the rulings already made in this case – that the Defendants did not breach Plaintiff's plea agreement and that he was properly classified as a sex offender – the Court finds such distinction without merit.  Moreover, Plaintiff did not rebut Defendants' statement that he is not prohibited from writing and calling his children. Therefore, without more, the Court finds that Plaintiff's due process claim regarding visits with his children fails.

e.  Mandatory Parole[4]

Under Colorado law, only inmates serving sentences for crimes committed on or after July 1, 1979, but before July 1, 1985, are entitled to mandatory parole. *Lusero v. Welt*, 223 F. App'x 780, 784 (10th Cir. 2007) (citing *Thiret v. Kautzky*, 792 P.2d 801, 805 (Colo. 1990)).  "Under the parole regime in place for crimes committed before July 1, 1979, or after July 1, 1985, when the inmate's actual time served, presentence confinement credit, and good time and earned time credits equal or exceed the sentence imposed, he is not entitled to an unconditional release, but rather has earned the right to be *considered* for parole." *Id.* (internal quotations and citations omitted) (emphasis added); *see also Thiret*, 792 P.2d at 805 (explaining that prisoners not fitting within the 1979-1985 category "may be granted or denied parole at the discretion of the Parole Board").

Plaintiff does not assert that he fits within the 1979-1985 category; in fact, the record reflects that his current incarceration was for a crime committed in 2007.  Therefore, he is not entitled to "mandatory" parole and his due process claim in this regard fails. *See Lusero*, 223 F. App'x at 784.

Based on the foregoing, the Court recommends finding that Plaintiff has failed to establish a genuine issue of material fact as to whether Defendants violated Plaintiff's due process rights.

3.  Double Jeopardy and *Ex Post Facto*

Plaintiff contends that Defendants' "use" of the plea agreement in the matters of sex offender

---

[4]The Court notes that, in his Supplemental Memorandum of Law Regarding Parole Eligibility, submitted in response to the Court's Notice of Conversion to Summary Judgment, Plaintiff confuses the terms "parole" and "probation" when he states that he was "sentenced to 6 years imprisonment with a mandatory period of 3 years parole following the incarceration."  Docket #86 at 2-3.  By assuming that his sentence imposed a mandatory "release" from incarceration (parole) rather than a mandatory "probation" (supervised period following incarceration), Plaintiff incorrectly argues that Defendants have "modified" his sentence by making parole eligibility discretionary in violation of the *ex post facto* clause. *See State v. Hewett*, 154 S.E.2d 476, 479 (N.C. 1967) ("Probation relates to judicial action taken before the prison door is closed, whereas parole relates to executive action taken after the door has closed on a convict.").  Therefore, his argument is not persuasive.

classification and treatment constitutes a violation of the Double Jeopardy Clause.  In essence, Plaintiff argues that Defendants initiated a civil action against him in classifying him as a sex offender, thereby causing Plaintiff to be "civilly committed" for his refusal to participate in the SOTMP.

The Double Jeopardy Clause of the Fifth Amendment protects defendants against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Anderson v. Mullin*, 327 F.3d 1148, 1153 (10th Cir. 2003).

Prison proceedings are not part of a criminal prosecution and, therefore do not implicate double jeopardy concerns. *Lucero v. Gunter*, 17 F.3d 1347, 1351 (10th Cir. 1994) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)); *see also Wirsching*, 360 F.3d at 1205 (CDOC policy attached to SOTMP does not implicate double jeopardy concerns); *Breed v. Jones*, 421 U.S. 519, 528 (1975) (application of the double jeopardy clause is limited to proceedings that are "essentially criminal").

Because classification of the Plaintiff as a sex offender in this case was not a judicial proceeding designed to punish a criminal defendant for violation of a criminal law, it is not a criminal punishment subject to the Double Jeopardy Clause.  *See United States v. Hanahan*, 798 F.2d 187, 189 (7th Cir. 1986).

Furthermore, Plaintiff's assertion that sex offender registration would "attach a new term of indefinite supervision to [his] plea" and, thus, violate the *ex post facto* clause is without merit.  *See* docket #39 at 11.  As stated previously, the Plaintiff will not be required to register as a sex offender upon his release.

Therefore, the Court recommends finding that Plaintiff has failed to demonstrate any genuine

issues of material fact regarding whether Defendants violated his constitutional claims under the *ex post facto* and double jeopardy clauses.

4. <u>Self-Incrimination</u>

Plaintiff claims that, through sex offender classification and treatment, the Defendants seek to compel him to admit guilt of the allegations underlying his guilty plea for unlawful sexual intercourse with a minor, and that his refusal to do so has caused adverse consequences sufficient to violate his Fifth Amendment right against self-incrimination. Specifically, the Plaintiff complains that, due to his refusal to participate in the CDOC's sex offender program, Defendants are withholding good time credits (resulting in ineligibility for parole under Colorado law) and denying him personal contact with his children.

Plaintiff's argument is controlled by the Supreme Court's decision in *McKune v. Lile*, 536 U.S. 24 (2002) and the Tenth Circuit's interpretations of that decision in *Gwinn v. Awmiller*, 354 F.3d 1211 (10th Cir. 2004) and in *Wirsching*, *supra*. According to *Gwinn* and *Wirsching*, a court must determine whether the consequences of an inmate's refusal to participate in a sex offender treatment program are "so great as to constitute compulsion" for purposes of the Fifth Amendment privilege against self-incrimination. *Gwinn*, 354 F.3d at 1225-26; *Wirsching*, 360 F.3d at 1202 (both citing Justice O'Connor's concurrence in *McKune*, 536 U.S. at 49).

In *Gwinn,* the Tenth Circuit applied the analysis of a Kansas state inmate's self-incrimination claim in *Searcy v. Simmons*, 299 F.3d 1220 (10th Cir. 2002), to a Colorado inmate's similar claim alleging that he was denied good time credits and the ability to parole by refusing to participate in the CDOC's sex offender treatment program. *See Gwinn*, 354 F.3d at 1226. The Tenth Circuit found that, because the CDOC retains discretion in awarding good time credits, Mr. Gwinn was simply faced with a choice between taking the opportunity to earn credits at a higher rate

or declining that opportunity by refusing to participate in the program, thereby avoiding the requirement that he admit to committing a sex offense. *Id.* The court found that the pressure imposed on Mr. Gwinn by this choice did not rise to a level where it is likely to compel a person to be a witness against himself. *Id. Gwinn* is controlling here - like Mr. Gwinn, the Plaintiff claims that Defendants are improperly compelling him to admit guilt in CDOC's sex offender treatment program by withholding good time credits and making him ineligible for parole. Pursuant to *Gwinn*, however, Plaintiff's claim fails.

Likewise, Plaintiff's assertion that Defendants' denial of visitation with his children improperly compels him to incriminate himself fails under *Wirsching*. The Tenth Circuit determined that, for the same reasons given for concluding that the CDOC did not violate the plaintiff inmate's due process rights by prohibiting visits between the inmate, a convicted sex offender who refused to comply with the requirements of the SOTMP and his child, the CDOC's ban on the visitation itself did not constitute compulsion in violation of the Fifth Amendment. *Wirsching*, 360 F.3d at 1204. *Wirsching* controls this case, and for the same reasons set forth herein to find no due process concerns regarding the Plaintiff's personal contact with his children, the Court finds that denial of this privilege is not "serious enough to compel [Plaintiff] to be a witness against himself." *See id.* at 1203.

Plaintiff's argument that he may, in the future, be required to register as a sex offender does not change this Court's conclusion. Such speculative consequence certainly does not rise to the level of being "so great as to constitute compulsion" under *Wirsching* or *Gwinn*.

Based on the foregoing, this Court recommends finding that Plaintiff has failed to demonstrate any issues of material fact regarding whether Defendants violated his Fifth Amendment right against self-incrimination.

5.     Illegal Search and Seizure/Privacy Act

First, Plaintiff has abandoned his claim under the Privacy Act (docket #76 at 20); therefore, this Court recommends that the claim be dismissed.

Second, Plaintiff claims that Defendants have placed in his file and relied on records from his California case to make adverse decisions against him in violation of the Fourth Amendment. More specifically, in his response to the Motion to Dismiss, Plaintiff argues that Defendants' use of the California plea and pyschosexual evaluation in classifying him as a sex offender violates his right to be free from unreasonable search and seizure, in that Defendants have impermissibly admitted the plea in violation of Fed. R. Evid. 410 and have used the evaluation without his consent in violation of Fed. R. Evid. 501. *Id.* at 20-21.

First, the Court agrees with Defendants that, to the extent Plaintiff complains that Defendants keep public court records in his prison file, his claim fails since he has demonstrated no reasonable expectation of privacy in such public records. *See Hudson v. Palmer*, 468 U.S. 517, 525 (1984) ("[t]he applicability of the Fourth Amendment turns on whether 'the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action'") (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).

Second, Plaintiff's argument regarding Rule 410 fails, since the Plaintiff has not demonstrated that sex offender classification by a prison facility is a "civil proceeding" under the rule. *See* Fed. R. Evid. 410 (2009).

Finally, the Plaintiff does not claim in his Second Amended Complaint that Defendants named herein (*i.e.*, those other than Tedesci) have improperly used the psychosexual evaluation, but rather, makes the claim in his first Amended Complaint against Defendant Tedesci and other defendants no longer named in the Second Amended Complaint. Even had the claim been brought

in the Second Amended Complaint against the within named Defendants, the Plaintiff has failed to establish how the evaluation was used improperly for his classification and/or treatment.  That is, the Court has already found that Plaintiff's sex offender classification was proper based on his prior conviction (not the psychosexual evaluation).  As for sex offender treatment, the Plaintiff asserts that he has refused treatment thus far; therefore, there can be no improper use at this point. Consequently, Plaintiff's argument set forth in his response to the Motion to Dismiss that his Fourth Amendment rights have been violated by improper use of the psychosexual evaluation is not persuasive as against Defendants CDOC, Zavaras, Michaud and McCullar.

Based on the foregoing, this Court recommends finding that Plaintiff has failed to demonstrate any issues of material fact as to whether Defendants violated his Fourth Amendment rights.

6.     "Jurisdiction": *Res Judicata* and Collateral Estoppel doctrines

Plaintiff claims that the Defendants have attempted to "exercise extra-territorial jurisdiction by application of a statute over claims and issues previously adjudicated [by applying] the SOTMP to the Plaintiff using a plea agreement . . . that resulted in a final judgment on its merits in violation of the doctrines of res judicata and collateral estoppel."  Docket #39 at 15.

The doctrine of collateral estoppel, or "issue preclusion," mandates that the final decision of a court on an issue actually litigated and determined is conclusive of that issue in any subsequent suit.  "Collateral estoppel bars re-litigation of an issue if: (1) the issue is identical to that actually and necessarily adjudicated in a prior proceeding; (2) the party against whom estoppel is asserted was a party or in privity with a party in the proceeding; (3) there was final judgment on the merits; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding." *City of Thornton v. Bijou Irrigation Co.,* 926 P.2d 1, 82 (Colo. 1996)

(citation omitted); *see also Frandsen v. Westinghouse Corp.,* 46 F.3d 975, 978 (10th Cir. 1995); *Orjias v. Stevenson,* 31 F.3d 995, 1010 (10th Cir.), *cert. denied*, 513 U.S. 1000 (1994).

*Res judicata*, or claim preclusion, applies to limit a party from bringing before the Court a matter that has already been addressed. *Res judicata* applies if (1) there was a final judgment on the merits in the earlier action; (2) the parties are identical or in privity in both cases; (3) the cause of action is the same; and (4) the plaintiff had a full and fair opportunity to litigate the claim in the prior suit. *Nwosun v. General Mills Rests.*, 124 F.3d 1255, 1257 (10th Cir. 1997).

In this case, the Plaintiff has not established that the issue of whether he would be classified and recommended for treatment as a sex offender has been litigated in a prior proceeding; therefore, for purposes of both *res judicata* and collateral estoppel, the Plaintiff has failed to show that there is privity of parties or issues and a final judgment on the merits. Consequently, this Court recommends finding that Plaintiff has failed to demonstrate any issues of material fact regarding whether Defendants violated the *res judicata* and collateral estoppel doctrines.

C.     Remaining State Tort Claim

Plaintiff has abandoned his defamation (libel/slander) claims against Defendants Zavaras, Michaud and McCullar; therefore, the Court recommends that Plaintiff's claims against these defendants be dismissed.

D.     Conclusion

In this case, the Plaintiff has failed to respond to Defendants' motion with specific facts showing a genuine factual issue for trial as to whether the Defendants have violated the Plaintiff's constitutional or statutory rights. Thus, this Court recommends finding that Defendants are entitled to qualified immunity and that all claims brought against them in their individual capacities be dismissed. Moreover, because the Court has determined that Plaintiff has failed to show any

material facts as to all claims brought against Defendants, whether in their individual or official capacities, the Court recommends that such claims be dismissed.

## II.     Plaintiff's Motion for Summary Judgment

The standard of review set forth *supra* applies with equal force to Plaintiff's Motion for Summary Judgment filed on June 1, 2009. Plaintiff claims that "no genuine dispute as to material facts exist for a fact finder to resolve" in this case and that he is "entitled to judgment as a matter of law since the Defendants lack jurisdiction over the subject matter of the plea out of California and their actions, in re-litigating matters that have been fully and finally litigated in another jurisdiction, violate the Full Faith and Credit Clause." Essentially, the Plaintiff raises the same arguments in his Motion for Summary Judgment that have already been addressed by the Court, *infra*; however, the Court notes that the Plaintiff raises two issues that require additional analysis.

First, Plaintiff claims that his execution of a "West Plea" agreement (referring to a plea of nolo contendere as set forth in *People v. West*, 477 P.2d 409 (Cal. 1970))  with the State of California amounts to a "use-derivative use" immunity by the San Diego prosecutor's office, which is binding on federal and state governments. Docket #89 at 6. First, even if such immunity were automatically granted to the Plaintiff through a plea of nolo contendere (for which Plaintiff provides no legal support), he does not explain how such immunity is relevant to his claims in this action (*i.e.*, there is no evidence that the Plaintiff will be required to testify in such a way that he will be compelled to incriminate himself) or how he can raise a claim (private cause of action) based on such immunity. Therefore, Plaintiff's argument is not persuasive.

Second, to the extent that the Plaintiff argues his plea of nolo contendere, as opposed to an ordinary plea of guilty, affects his classification as a sex offender [docket #89 at 6], such argument is addressed *supra* at paragraph B.2.a. Moreover, the Tenth Circuit in *Wirsching* found that the

plaintiff's nolo contendere plea, including whether he had previously admitted or failed to admit the sexual misconduct at issue, was not a factor to consider in a Fifth Amendment self-incrimination analysis. *Wirsching*, 360 F.3d at 1204 (citing *Blohm v. C.I.R.*, 994 F.2d 1542, 1554 (11th Cir. 1993) ("[T]he collateral consequences flowing from a [nolo contendere] plea are the same as those flowing from an ordinary plea of guilt.")).

The Court finds that Plaintiff has failed to establish the Defendants have violated any constitutional, statutory or common law claim based on the facts before the Court. Thus, based on the record and for the reasons listed herein, this Court recommends that the District Court deny Plaintiff's Motion for Summary Judgment.

## III.   Plaintiff's Motion for TRO/Preliminary Injunction

Issuance of a temporary restraining order is subject to the court's discretion. *Hinkel Dry Goods Co. v. Wichison Indus. Gas Co.,* 64 F.2d 881, 883 (10th Cir. 1933). Where the opposing party has notice, the procedure and standards for issuance of a temporary restraining order mirror those for a preliminary injunction. 11A Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure § 2951 (2d ed. 1995).

A preliminary injunction is an extraordinary remedy that should be granted only when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.,* 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, a party requesting a preliminary injunction must clearly establish that: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Id.* The burden is on the movant to establish his right to the relief requested. *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975).

Moreover, "[b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, the Tenth Circuit has identified the following three types of specifically disfavored preliminary injunctions ... (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Schrier*, 427 F.3d at 1258-59 (citations omitted). These disfavored injunctions are "more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 1259.

Here, Plaintiff appears to seek a preliminary injunction that would require Defendants to act in a way that (Plaintiff alleges) is contrary to their prior practices, *i.e.*, to change Defendants' decision to deny visitation, good time credits, etc., and to classify him as a sex offender. Given the relief Plaintiff appears to seek, the relief sought would alter the status quo rather than preserve it and would also require Defendants to engage in affirmative actions. For these reasons, the injunctive relief sought by Plaintiff "constitutes a specifically disfavored injunction" that "must be more closely scrutinized." *Id.* at 1259, 1261.

With these principles in mind, the Court has already found that the Plaintiff cannot succeed on the merits of his claims; thus, the Plaintiff cannot demonstrate one of the prerequisites for seeking an order for preliminary injunction. Even if a likelihood of success exists in this case, however, the Court finds that the Plaintiff has failed to demonstrate irreparable harm.

It is well established that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260

(10th Cir. 2004) (citations omitted).  Thus, the Plaintiff must first show that he will suffer irreparable injury if his request for injunctive relief is denied.  *Id.* at 1258.  "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.' " *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C. Cir. 1985)).  Irreparable harm is more than "merely serious or substantial" harm.  *Id.* (citation omitted).  The party seeking the preliminary injunction "must show that 'the injury complained of is of such *imminence* that there is a clear and present need for equitable relief' to prevent irreparable harm."  *Id.* (emphasis in original) (citation omitted).

In his motion, the Plaintiff alleges the following deprivations as a result of his sex offender classification: restrictions on visitation, denial of good time credits, denial of application to parole to his house, and mandatory sex offender treatment (which the Plaintiff has refused). The Court has already addressed these issues in Defendants' Motion for Summary Judgment and has found that such deprivations do not rise to the level of constitutional violations and, thus, do not constitute legal harms for which the Plaintiff may recover under 42 U.S.C. § 1983.  Even if they were legal harms, however, the Plaintiff failed to demonstrate how such harms (some of which are speculative) are either certain or great, which is necessary for the issuance of a preliminary injunction.  Therefore, the Court recommends that, based on the foregoing, Plaintiff's Motion for Preliminary Injunction be denied.

## CONCLUSION

Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. L.Civ.R 72.1(C), I therefore RECOMMEND that Defendants' Motion to Dismiss Second Amended Complaint [filed March 13, 2009; docket #52], which was converted to a Motion for Summary Judgment on September 18, 2007 [docket #84], be **granted**, that Plaintiff's Motion for Summary Judgment [filed June 1, 2009; docket

#89] be **denied**, that Plaintiff's Motion for T.R.O. and Preliminary Injunction [filed January 26, 2009; docket #37] be **denied**, and that Plaintiff's claims against Defendants be **dismissed with prejudice**.

Dated at Denver, Colorado this 13th day of August, 2009.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge